J-S30006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY BEST | : | |
| | : | |
| Appellant | : | No. 2405 EDA 2024 |

Appeal from the Order Entered August 16, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002796-2018

BEFORE:   OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                   **FILED DECEMBER 8, 2025**

Appellant, Jeffrey Best, appeals from the order entered on August 16,

2024, designating him as a sexually violent predator (SVP) pursuant to 42

Pa.C.S.A. § 9799.12. We affirm.

Previously, this Court summarized the facts as follows:

At approximately 11 p.m. on June 2, 2013, in the Northern section
of Philadelphia near the intersection of Old York Road and Rising
Sun Avenue, [Appellant] approached [Victim] and propositioned
her for sex. During this time, [Victim] was working as a prostitute
to support her drug and alcohol addiction. She had never seen nor
interacted with [Appellant] before. She noted that he had a limp.
[Appellant] offered her $20.00 and they proceeded to the side of
an abandoned house together. [Appellant] suggested they go to
the back of the house and, despite her reluctance, [Victim]
agreed.

[Victim] testified that [Appellant] pressed a hard object against
her back and told her he was going to "blow [her] brains out." He
told her to take off all her clothes and [Victim] complied.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[Appellant] forced her to go further back behind the abandoned house. [Appellant] forced [Victim] to lay on her back and have vaginal and anal sex with him. He continued to repeat that he would blow her brains out if she said anything. [Appellant] forced [Victim] to turn around and get on her knees. He then forcibly had anal sex with [Victim]. After this, [Appellant] forced [Victim] to give him oral sex. The entire interaction lasted for, what [Victim] described as, "a while." After he was done, [Appellant] put his clothes on and ran away.

[Victim] put on her clothes and ran nearly twenty blocks down Broad Street until she saw an ambulance and told EMTs that she had been raped. The ambulance took her to Episcopal Hospital where she received treatment for her injuries, and a rape kit was administered. [Victim] sustained scarring on her knees from the incident. At trial, [Victim] showed her knee scarring to the trial court, which was still noticeable. At the hospital, she told the nurses and doctors that she was raped. She also was interviewed by a detective at the hospital.

In 2018, while [Victim] was in a rehabilitation facility, she was contacted by detectives who stated that they had a DNA match for her rapist.  Detective Manuel Gonzalez, assigned to the Special Victim[s'] Unit ("SVU"), first became involved with this case in 2018 when he received a "hit" from the national DNA database. [Appellant] voluntarily gave a DNA swab to detectives at some point. This DNA sample from [Appellant] matched DNA from the swabs taken at the hospital from [Victim's] body on the night of June 2, 2013. [Appellant's] DNA was identified as a "major component" in the DNA mixture from the rape kit.

Detective Gonzalez interviewed [Victim] shortly after the DNA match, showing her the interview she did with Detective McGoldrick in 2013 and confirming that the details from that interview were correct. The following day, Detective Gonzalez did a follow up interview with [Victim] for additional details. His partner, Detective Enriquez, showed [Victim] a photo array where she identified [Appellant]. Detective Gonzalez then interviewed and obtained a signed statement from [Appellant]. Shortly after, [Appellant] was arrested.

 [Appellant] testified that he has had cerebral palsy his whole life, he walks with the assistance of a cane and has limited use of his left side.  He confirmed that he propositioned [Victim] for sex, [initially telling her that he had $20.00 dollars]. [Appellant]

confirmed that they had sex outside of the abandoned building but testified that during the exchange there were multiple disputes over the manner of sex and the amount of money he was to pay her. Appellant] claimed that at no point did he force [Victim] to have sex with him. He argued that his disability would prevent him from committing this crime.

The trial court, at the non-jury trial, found Appellant guilty of the above-stated offenses and ordered an assessment by the Sexual Offender Assessment Board (SOAB).

**Commonwealth v. Best**, 301 A.3d 938 (Pa. Super. 2023) (record citations omitted).

On July 13, 2021, following a bench trial, the trial court found Appellant guilty of one count of rape by forcible compulsion, involuntary deviant sexual intercourse (IDSI) by forcible compulsion, sexual assault, terroristic threats, and possessing an instrument of crime (PIC).[1]

On March 21,2022, the trial court held an SVP and sentencing hearing. Following the sentencing hearing, the trial court determined that Appellant was an SVP and sentenced Appellant to 10 to 20 years of imprisonment followed by four years of probation.

In an unpublished memorandum filed on June 29, 2023, we "affirm[ed] the judgement of sentence, but vacate[d] the SVP determination and remand[ed] for a new SVP hearing" because "the Commonwealth did not move to admit the [Sexual Offender's Assessment Board (SOAB) report into evidence" and therefore, "presented no formal evidence at the SVP hearing[.]" **Best**. 301 A.3d 938, at *6-7 and n.7.

_____

[1] 18 Pa. C.S.A. §§ 3121(a)(1), 3123 (a)(1), 3124.1, 2706 (a)(1), and 907.

All other aspects of Appellant's sentence were affirmed. *Id*. Upon remand, a new SVP hearing was conducted on August 16, 2024, wherein the trial court designated Appellant as an SVP. This timely appeal followed.[2]

Appellant raises the following issue for our consideration:

> [Did] the trial court err when it classified [Appellant] as [an SVP] based on the evidence put forth at the hearing held on August 16,2024[?]

Appellant's Brief at 6.

Appellant argues that the Commonwealth did not meet its burden of proving he was an SVP. Appellant's brief at 13. Appellant asserts that the Commonwealth, inter alia, "through its expert relied upon multiple unproven allegations of prior conduct to predicate this finding [despite] that the court specifically declined to consider." *Id*. As such, Appellant claims that the Commonwealth failed to prove he is an SVP by clear and convincing evidence. *Id*.

Our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Meals***, 912 A.2d 213, 218 (Pa. 2006) (citation omitted).

> The determination of a defendant's SVP status may only be made following an assessment by the [SOAB] and [a] hearing before the trial court. In order to affirm [a trial court's] SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a [SVP].

---

[2] Appellant filed a timely notice of appeal on September 8, 2024. The trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.1925(b) and Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P.1925(a) on November 21, 2024.

> As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth [, as the prevailing party on this issue]. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Fuentes*, 991 A.2d 935, 941-942 (Pa. Super. 2010) (*en banc*) (citation omitted), *appeal denied*, 12 A.3d 370 (Pa. 2010). The clear and convincing standard governing a determination of SVP status "requires evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Meals*, 912 A.2d at 219 (citation, original quotation marks, and original brackets omitted).

> Section 9799.12 defines the term "sexually violent predator" as,
>
> [a]n individual who committed a sexually violent offense on or after December 20, 2012, for which the individual was convicted, [ ] who is determined to be a [SVP] under [S]ection 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9799.12; *see also Commonwealth v. Butler*, 226 A.3d 972, 992 (Pa. 2020) (stating, an SVP, in addition to having been convicted of a sexually violent offense, is a person "who [has] been individually determined to suffer from a mental abnormality or personality disorder such that they are highly likely to continue to commit sexually violent offenses"). A "sexually violent offense" is defined as "[a]n offense specified in section 9799.14 (relating to sexual offenses and tier system) as a Tier I, Tier II[,] or

Tier III sexual offense committed on or after December 20, 2012, for which the individual was convicted." 42 Pa.C.S.A. § 9799.12. "Predatory" is defined by SORNA as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.* Importantly, the Commonwealth need not rely on the instant offense to demonstrate that an offender is likely to engage in predatory behavior. *See Commonwealth v. Fletcher*, 947 A.2d 776, 776 (Pa. Super. 2008) (explaining that the Commonwealth is only required to demonstrate that the offender "is likely to engage in predatory behavior," regardless of whether the offense at issue[ ] was predatory itself.).

Under Section 9799.24, after a defendant is convicted of a sexually violent offense but before sentencing, the trial court shall order the SOAB to conduct an "assessment of the individual to determine if the individual should be classified as an [SVP.]" 42 Pa.C.S.A. § 9799.24(a) and (b). In performing its assessment, the SOAB examines, *inter alia*, the following:

> (1) Facts of the current offense, including:
>
>> (i) Whether the offense involved multiple victims.
>>
>> (ii) Whether the individual exceeded the means necessary to achieve the offense.
>>
>> (iii) The nature of the sexual contact with the victim.
>>
>> (iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa. C.S.A. § 9799.24.

However, we have determined:

[] With regard to the various assessment factors listed in Section 9795.4, there is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation. The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation. Rather, the presence or absence of one or more factors might simply suggest the presence or absence of one or more particular types of mental abnormalities.

Thus, while the Board is to examine all the factors listed under Section 9795.4, the Commonwealth does not have to show that

any certain factor is present or absent in a particular case. Rather, the question for the SVP court is whether the Commonwealth's evidence, including the Board's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses. Having conducted a hearing and considered the evidence presented to it, the court then decides whether a defendant is to be designated an SVP and thus made subject to the registration requirements of 42 Pa.C.S.A. §9795.1(b)(3).

**Commonwealth v. Feucht**, 955 A.2d 377, 381 (Pa. Super. 2008)(citations omitted).

Previously in this case, this Court concluded that there was insufficient evidence in the record to support the SVP finding:

Section 9799.24 imposes a burden on the Commonwealth to praecipe for and produce at the SVP hearing formal evidence, which the Commonwealth did not meet in this case. To the extent the Commonwealth elected to proceed solely on the SOAB report, it bore a minimal burden of creating a competent record by moving for the admission of the SOAB report into the record or obtaining a stipulation to the report's admission into evidence*...*Otherwise, the Commonwealth's burden of production to prove by clear and convincing evidence that Best was an SVP required it to call an expert to provide testimonial evidence. In the instant case, the Commonwealth merely marked the SOAB report as an exhibit, without formally moving to admit it into evidence, and only summarized the results of SOAB report as a part of arguments to the trial court.

**Best**, at *6 (citations omitted).

Upon review, the trial court has since remedied this error on remand and conducted a direct and cross-examination of Steven Pflugfelder, an expert psychologist in the field of SVP assessments and the Appellant's SOAB evaluator. Pflugfelder's SOAB report was also properly entered into evidence as Exhibit C-1.

Pflugfelder specifically testified how the Section 9799.24 factors applied to Appellant. As to the first factor, there was only one identified victim. N.T. 8/16/2024, at 24. As to the second factor, Pflugfelder recounted that Appellant isolated the victim, put a gun to her back, and threatened to shoot exceeding necessary means to engage in sexual contact with Victim. *Id*. at 25. Appellant raped Victim orally, vaginally, and anally for three and a half hours. *Id*. Victim was a stranger to Appellant, raising the risk of the behavior. *Id*. Pflugfelder opined that Appellant acted with unusual cruelty by threatening Victim with a gun. *Id*. at 26. Pflugfelder also considered prior rape allegations against Appellant as a pattern of behavior, even though Appellant did not have any prior convictions. *Id*. at 27. Pflugfelder did not find any other factors particularly significant in his findings but ultimately concluded that Appellant met the criteria for being a sexually violent predator to a reasonable degree of scientific certainty. *Id*. at 36-37. More specifically, Pflugfelder concluded that Appellant suffers from a paraphilic arousal to non-consensual activity which makes him likely to reoffend. *Id*. at 48. The trial court concluded that based on the testimony and evidence that:

> []There was clear and convincing evidence that [Appellant] has a mental abnormality or mental disorder that makes him likely to engage in predatory sexually violent offenses. In the present case, [Appellant's] behavior was predatory in that his victim was a stranger to him (or alternatively, he established the relationship with [Victim]—*i.e*. he hired her [for] sex—for the purpose in whole or in part to victimize her). [Appellant's] behavior toward his victim exceeded the means necessary to achieve the offense and was a display of unusual cruelty. He isolated [Victim], pressed a gun into her back, threatened to shoot her brains out, forced her

to perform oral sex on him, and then repeatedly raped her both vaginally and anally over the course of hours.

Trial Court Opinion, 11/21/2024 at 7-8.

Based upon our standard of review, we discern no abuse of discretion or error of law in designating Appellant an SVP. The trial court carefully weighed the aforementioned factors and found, by clear and convincing evidence, that Appellant is an SVP. The Commonwealth presented evidence that Appellant engaged in predatory behavior with excessive force and unusual cruelty by forcing Victim to engage in oral, vaginal, and anal sex at gunpoint over the duration of several hours and that Appellant had a mental abnormality that made him likely to reoffend. The trial court gave proper credit and weight to the expert's testimony, and we find no error of law or abuse of discretion.  Accordingly, we affirm the trial court's order designating Appellant as an SVP.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/8/2025